LEIGH M. CLARK, Retired Circuit Judge.
Richard Adams was found guilty by a jury “of unlawfully selling, furnishing or giving away Pentazocine, a controlled substance,” to Tommy Johnson, and was sentenced by the court to imprisonment for three years. Tommy Johnson was a Mobile County Deputy Sheriff working under cover, who testified that he bought some “drugs” from Richard Adams and placed them in a “small tinfoil package,” which he took to the Sheriff’s Department within about thirty minutes thereafter.
In some of the cross-examination of witnesses for the State, defendant’s attor *905 ney was able to develop information that tends to support a conclusion that there were one or more breaks in the linkage of the chain of custody between the purchase of the substance and its exhibition during the trial of the case as State’s Exhibit 1, which purported to contain some of the substance. As the actual content of State’s Exhibit 1 was never discernible by the jury, the linkage between Exhibit 1 on the trial and the content of State’s Exhibit 1 before it was brought to the trial is of no material significance. The only linkage of material significance is that which purports to constitute the linkage between the custody by Officer Johnson of the substance he purchased and the custody of Ms. Debra Sennett, the chemist who analyzed the substance and testified that it contained Pentazocine, a controlled substance, otherwise known as Talwin. Defendant’s attorney developed a weakness in that link by his cross-examination of Officer Johnson, as illustrated by the following part of Officer Johnson’s testimony on cross-examination:
“Q. So, it’s very possible that you may have bought some other Talwin from another Defendant that night; isn’t that correct?
“A. That’s correct.
“Q. All right. When you got the tinfoil packet containing the tablets, did you mark them in any way at that time?
“A. No, I didn’t.
“Q. And you don’t know whether or not you had any packets other than that with you at that time, do you?
“A. That’s correct.
“Q. All right. When did you mark for identification that particular packet that you got from somebody that night?
“A. When I arrived back at the Sheriff’s Department.
“Q. All right. Do you remember whether or not you had any other packets with you at that time?
“A. No, I don’t.
“Q. For all you know you could have; is that right?
“A. Possible.
“Q. Okay. More Talwin?
“A. Possible.
“Q. All right. And you put the Talwin in the vault; is that correct?
“A. That’s correct.
“Q. All right. Do you recall what night of the week this was?
“A. No, I don’t.
“Q. All right. But it was June 30th, 1982, right?
“A. That’s correct.
“Q. Okay. And you took it to the lab when?
“A. The following day.
“Q. All right. That would have been July the 1st.
“A. That’s correct.
“Q. All right. And who all had access to this vault in the Mobile County Sheriff’s office?
“A. Myself and about four other officers.

“Q: All right. And the next day you took it to whom?
“A. The Toxicologist Office.
“Q. And who was that?
“A. Debra Sennett.
“Q. All right. Did you hand it to her personally?
“A. That’s correct.
“Q. Okay. Do you know whether or not she marked it for identification?
“A. That’s correct.”
We are of the opinion that, although the first part of the quoted testimony of Officer Johnson revealed some weakness in the chain of custody, considerable strength is to be found by the second part of the cross-examination and that the integrity of the link of the chain of custody personified by Officer Johnson is established with reasonable certainty. The integrity of the next link, personified by Ms. Debra Sennett, is to be found in the following portion of her testimony:
“Q. All right. Now, did you have occasion to receive on July 1st of 1982 any suspected controlled substances from Dep. Tommy Johnson?
*906 “A. I did.
“Q. What time did you receive them? “A. At 11:15.

“Q. All right. Now, what did you receive from Dep. Johnson at that time? “A. I received a manila envelope that was sealed with clear celephone [cellophane?] tape. And it was initialed ‘T.J.’ and that’s what I received.
“Q. All right. And what did you do with the envelope, ma’am?
“A. It was under my custody and control until such time that I removed a portion of the material that was contained within and performed my analysis on it.”
We are not convinced that there was any impairment of the integrity of the linkage between the link of custody of Ms. Debra Sennett and that of Officer Bochenek, who received State’s Exhibit 1 from Ms. Debra Sennett and brought it to the courtroom during the trial. However, if it had been impaired, it would not have been, as we have indicated above, an impairment of any material part of the chain of custody.
By appellant’s only other contention for reversal, he argues that the trial court “committed reversible error in allowing the State to reopen its case after the State had rested and the defendant had moved for a directed verdict of acquittal.” We fail to find in the transcript any semblance of an objection to or any protest against the court’s allowing the State to reopen its case. For us to predicate a reversal upon action by the court would be in conflict with the accepted proposition that review on appeal is limited to matters on which rulings were invoked in the trial court. Frazier v. State, 53 Ala.App. 492, 301 So.2d 256 (1974); Stinker v. State, Ala.Cr. App., 344 So.2d 1264, 1268 (1977).
We feel indisposed to close our opinion without noting that defendant took the stand and denied he was the person that made the sale as to which Officer Johnson testified. The evidence shows that he lived at the address at which the sale was made, but from our reading of the transcript, our impression of defendant and his testimony is not altogether unfavorable. That jurors were somewhat favorably impressed by his testimony is indicated to some extent by the fact that the jury could not reach a verdict after two attempts in the jury room on the afternoon the case was submitted to the jury and the jury was excused for the night. The next morning, the verdict was reached soon after the jury reassembled and retired to the jury room for deliberation. It is to be noted from the testimony of defendant that he did not contend or intimate that the substance purchased by Officer Johnson was not the prohibited substance charged in the indictment. Favorable to him particularly was some of his testimony as follows:
“Q. All right. Okay. What were you doing for a living back on June 30th of 1982, Richard?
“A. I was helping a guy in the back of me on a paper wood truck. I was working days with him. When just little odd jobs come, help him some days. When it rained and I couldn’t do that, I helped another guy landscape, doing, you know, regular job.
“Q. Were you working steady back then?
“A. Yes, sir, you know, I didn’t have no regular job, just one job doing paper wood. And when it rained, I would help this guy do landscaping and cleaning up. I mean, I kept regular on helping support my family.
“Q. Did you sell any drugs to supplement your income?
“A. No, sir. I. never sold no drugs, don’t even use no kind of drugs.
“Q. All right. Does your wife use drugs?
“A. No, sir.
“Q. Do you allow any drugs in your house?
“A. None that I know of, no, sir, no, sir.

“A. I heard him say that I sold him some. But I never sold no drugs or no one at my house that I know of. I mean, *907 I was getting stopped for drugs by the Prichard Police all the time. But they never caught me or had seen me with no drugs that I was always getting stopped for.
“Q. All right. Did they come out to your house with a search warrant, the Mobile County Sheriffs Department?
“A. Yes.
“Q. Did they search your house? [Search was made soon after the sale to Officer Johnson.]
“Q. Did they find any drugs or did they arrest you for having any drugs?
“A. No, sir. They didn’t arrest me. They never found none.
“Q. Did you have any on you?
“A. I didn’t have none.”
Notwithstanding the sincerity and honesty of the jury in reaching its verdict and the sincerity of all the witnesses for the State and of all concerned in prosecuting and defending the case, we think much can be said to the credit of appellant. It is hoped that he will prove himself an exemplary prisoner, worthy of respect and consideration while in prison and always thereafter upon his completion of the moderate sentence imposed by the trial court.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur except BOWEN, P.J., who concurs in the result only.