LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a judgment of conviction and sentence on a jury trial on an indictment that charged that defendant did “unlawfully sell, furnish or give away Pentazocine or Diazepam, controlled substances, ... in violation of § 20-2-7 of the Code of Alabama, _” The court sentenced defendant to imprisonment for ten years.
Only two issues are presented in brief of counsel for appellant.
By the first issue presented in the brief of counsel for appellant, reversible error is sought to be shown by the refusal of the trial court to give the following charge requested in writing by defendant:
“I charge you, members of the jury, that if you are reasonably satisfied that a witness has testified willfully, falsely, and intentionally to any material fact in the ease, then the law says, as to that particular witness, you have a right to disregard entirely the testimony of that witness. If the jury is reasonably satisfied that a witness has willfully and corruptly sworn falsely as to a matter, material to the issues in the case, it may in its discretion, reject all of the testimony of that witness.”
The first sentence of said charge is not an unambiguous statement of the law, in that it is subject to the construction that the adverbs, willfully and intentionally, are *1159 modifiers of the verb, testified, solely, and not as modifiers of the other adverb, falsely, also. Furthermore, we note that the correct proposition of law on the particular, point that the writer of the particular requested charge apparently intended to express was fully covered by the oral charge of the court, particularly in the sentence in the oral charge, “In the event you determine any witness under oath has intentionally testified falsely to any material fact, you may disregard that witness’ testimony in its entirety.”
In the only other ground asserted by appellant for a reversal of the judgment of the trial court, he contends that “a proper chain of custody was not established prior to the admission of the controlled substances into evidence.” The witness named in the indictment as the person to whom the defendant was charged with having sold the controlled substances testified on the trial that at the time of the particular transaction he was working with the Mobile Police Department as an undercover agent “to obtain drug buys if possible.” The following is a part of his testimony:
“A. He [defendant] went in the trunk of the automobile and had a little tote bag and come out with a little match box and that match box contained two tablets.

“Q. All right. And did you take the match box from Mr. Vaughn?
“A. I did.
“Q. And did you give him anything in return for the match box?
“A. Twenty dollars in U.S. currency.
“Q. Twenty dollars?
“A. Um-hum.
“Q. What happened next?
“A. After that, I turned and walked off.

“Q. And what did you do with the match box?
“A. Walked out about three blocks. Officer Pears, Officer Monigan came along. I got in the car, presented the drugs to them.
“Q. Do you remember which officer you gave the match box?
“A. Pears.
“Q. Officer Pears?
“A. (Witness nodding.)”
Officer Pears testified that on the particular night he also was working under cover and maintained contact with “Officer Moni-gan and Reserve Officer McKinney ... trying to make undercover buys.” He said that while doing so, he observed from a distance, some transaction between the defendant and Mr. McKinney. His testimony continued as follows:
“Q. Did you keep Mr. McKinney in your line of vision all the way back to the car?
“A. Yes.
“Q. And what if anything happened when Mr. McKinney — Did he make any stops along the way?
“A. No, he didn’t.
“Q. Did you see him throw anything down or pick anything up?
“A. No.
“Q. And what if anything happened when he got back to the car?
“A. He got back in the car. I asked him did he get anything and he handed me the match box that he had.
“Q. Did you open the match box that he had at that time?
“A. Yes, I did.
“Q. What if anything did you see in the match box?
“A. Two Talwin and three Valiums.
“Q. What had you had occasion to see those drugs before in your capacity as undercover officer?
“A. Yes, I have.
“Q. And did they have the appearance of those particular drugs?
“A. Yes, they did.
“Q. Describe the pills, if you would, please, sir.
“A. The two Talwins are orange tablets and the Valiums are blue.
“Q. Was there anything else in the match box?
“A. No, that was all.
“Q. What if anything did you do with the match box?
*1160 “A. I kept it in my custody until it was turned over to the lab.
“Q. And how long would that have been, if you recall?
“A. I think it was turned over on the 4th, I believe.
“Q. Three days later?
“A. Yes.
“Q. Where did you store those drugs in that interim?
“A. They would have been kept in the trunk of the car.
“Q. Of your undercover car?
“A. Yes.
“Q. Were there any other drugs in the trunk of that car?
“A. No, there wasn’t.
“Q. Who else had access to these drugs during that period of time?
“A. I was the only one that had keys to the car.

“Q. And did you retrieve the pills out of the trunk of the car?
“A. Yes.
“Q. And did you check them again?
“A. Yes, I did.
“Q. Did they still have the same appearance?
“A. Yes.
“Q. Then you turned them over to the lab; is that correct?
“A. Yes.
“Q. At the time you turned them over, were they in substantially the same condition that they were at the time you received them?
“A. Yes, they were.”
Ms. Sylvia Bryant, whose expertise as a toxicologist is not questioned by appellant, testified that she was employed by the Mobile Police Department Crime Laboratory. We quote the following from her testimony:
“Q. Did you have an occasion to receive some evidence from Officer Pears on November the 4th of 1982?
“A. Yes, I did.
“Q. And what evidence was that please, ma’am?
“A. I received from Officer Pears in the crime lab at 1:00 P.M. a match box containing two orange tablets and three blue tablets.
“Q. And did you perform any tests to determine what kind of tablets those were?
“A. Yes. I did chemical analysis on both the tablets, both microscopic and as well as other chemical analysis — UV spec, TLC color screening, an average of about four or five tests per — for the two substances and it revealed them to be, the orange tablets to be Talwin, which contains Pentazocine hydrochloride and the blue tablets to be a Valium, the 10 milligram that are put out by Roche Pharmaceuticals, and they contain the controlled substance Diazepam.
“Q. And pentazocine and Diazepam, are those substances controlled in this State?
“A. Yes, they are both controlled under Schedule 4.
“Q. And prior to the time that you performed your analysis on those tablets, did those remain in your custody and control?
“A. Yes, they did.
“Q. And were they in substantially the same condition as they were when you received them at the time you performed your tests on them?
“A. Yes, they still are. They are still sealed. They have my initials.
“Q. And did you bring those substances with you today to court?
“A. Yes, I did."
Thereupon, the match box, the five tablets or pills, and an envelope containing them were introduced and received in evidence as State’s Exhibits One and Two.
The difference in the language of Officer McKinney and the language of Officer Pears as to the number of tablets or pills involved, Mr. McKinney referring to them as “two tablets,” and Officer Pears referring to them as “five pills,” is emphasized by appellant’s counsel in support of his argument that the chain of custody was not established as an unbroken one. We are of the opinion that the difference is *1161 accounted for by the use of the numeral two as referable to the two kinds of tablets or pills while the numbering of them as five relates to the total number of the individual pills involved. In our opinion, the evidence shows a proper chain of custody of the contraband from the time it passed from the possession of the defendant to Mr. McKinney until the examination thereof by Ms. Bryant and thereafter throughout the trial of the case.
We conclude that the trial court committed no error prejudicial to defendant and that its judgment should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.