Lucky Stevens was convicted for the sale of marijuana, fined $1,000, and sentenced to five years' imprisonment. Two issues are raised on this appeal from that conviction.
 I
We find no impropriety in the prosecutor's closing argument. The offense was based upon the defendant's sale of marijuana to a state undercover agent, John Crawford. The only question the jury had to decide was whether they believed Crawford or whether they believed the defendant who testified that he had never sold Crawford any marijuana.
During the prosecutor's closing argument, the following occurred:
 "[MR. CAUSEY, Assistant District Attorney]: I want you to consider whether or not John Crawford told a big lie when he got up on the witness stand under oath. That's the first thing I want you to consider because that's what the defendant says, that's his case. His whole case is that Crawford lied. He lied all the way through his testimony. The defendant says, 'I'm telling the truth.' Now, when he says that, you consider who's got something at stake. In other words, bias. Does the defendant have something at stake in his testimony? Did he testify untruthfully in any respect? If so, the law is you can disregard his entire testimony. Did John Crawford testify truthfully or did he lie about the whole thing? If he lied, you have got to find Lucky Stevens not guilty, if John Crawford lied. Now, what's the testimony? Mr. Crawford's testimony is that he has been employed with the State of Alabama as an undercover agent doing this type of work for over nine years, more than nine years of doing this exact thing, going to court, making drug buys, making whiskey buys. I don't believe and I don't believe that you think that this man would be employed in the same job —
 "MR. MADDEN [Defense Counsel]: (INTERPOSING) I'm going to object the embellishing of the credibility of this witness. This man may have been lying for nine years and never been caught. This is improper argument to the jury.
 "THE COURT: I think he has a right to comment on the testimony of his witness, and I overrule the objection."
The governing principles are succinctly summarized inUnited States v. Sims, 719 F.2d 375, 377 (11th Cir. 1983), cert. denied, 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703
(1984):
 " 'Attempts to bolster a witness by vouching for his credibility are normally improper and error.' United States v. Ellis, 547 F.2d 863, 869 (5th Cir. 1977). The test for improper vouching is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. United States v. Roberts, 618 F.2d 530, 537 (9th *Page 375 
Cir. 1980) (citing Ellis, supra). This test may be satisfied in two ways. First, the prosecution may place the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity. See United States v. Lamerson, 457 F.2d 371, 372 (5th Cir. 1972); Gradsky v. United States, 373 F.2d 706, 709-10 (5th Cir. 1967). Secondly, a prosecutor may implicitly vouch for the witness' veracity by indicating that information not presented to the jury supports the testimony. See United States v. Brooklier, 685 F.2d 1208, 1218 (9th Cir. 1982) (explaining United States v. Roberts, 618 F.2d 530 (9th Cir. 1980))."
Crawford testified that he had been employed by the State of Alabama to do undercover work for over nine years, and that he had held the "same job" for the "same people." The prosecutor's comment was a legitimate and reasonable inference from this testimony. Here, as in Ex parte Waldrop, 459 So.2d 959, 961
(Ala. 1984) cert. denied, Waldrop v. Alabama, 471 U.S. 1030,105 S.Ct. 2050, 85 L.Ed.2d 323 (1985), "the prosecutor was not injecting his own knowledge or experience into the argument, nor was he indicating a personal belief in the veracity of the witnesses' statements. 'During closing argument, the prosecutor as well as defense counsel has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference.' Milton v. State, 417 So.2d 620
(Ala.Crim.App. 1982)." In Waldrop, 459 So.2d at 960, the prosecutor stated that the investigating officers "have done an outstanding job and this community ought to be proud of them." "Counsel may argue to the jury the credibility of witnesses as long as he confines his argument to the evidence and the fair inferences to be drawn therefrom, but he may not go beyond the evidence and state as fact his personal knowledge as to the truthfulness or untruthfulness of the testimony of a witness."McGhee v. State, 41 Ala. App. 669, 671, 149 So.2d 1 (1962), affirmed, 274 Ala. 373, 149 So.2d 5 (1963).
 "Every fact the testimony tends to prove, every inference counsel may think arises out of the testimony, the credibility of the witnesses, as shown by their manner, the reasonableness of their story, their intelligence, means of knowledge, and many other considerations, are legitimate subjects of criticism and discussion. . . . The presiding judge, as a rule, will best determine when discussion is legitimate, and when it degenerates into abuse and undue license. While he should not permit wanton abuse of adversary or witness, he would occupy questionable ground, if he arrested counsel in his attempt to educe inferential facts or intents from testimony in proof. Argument is but an aid to the jury, to enable that body to arrive at correct conclusions; and it would be dangerous to accord to the presiding judge the right and power to intervene, and declare authoritatively when an inference of counsel is or is not legitimately drawn. This is for the jury to determine, if there be any testimony on which to base it." Cross v. State, 68 Ala. 476, 482-83
(1881).
 II
The defendant contends that the marijuana should not have been admitted into evidence because there was the "substantial likelihood" of a break in the chain of custody created by the facts that Crawford testified that he purchased approximately one quarter ounce of marijuana while expert Joseph Wallace testified that the marijuana actually weighed 0.0945 ounces. We agree with the trial court that this discrepancy went to the credibility to be given the evidence rather than its admissibility.
Crawford testified that he estimated the weight of the marijuana he purchased and that it was "approximately" one-fourth ounce. He stated that he did not give the exact weight and would not know the difference between one-fourth ounce and one-tenth ounce of marijuana unless he weighed it.
The record shows that the State established the reasonable probability that the marijuana introduced into evidence was the *Page 376 
same as, and not substantially different from, the marijuana as it existed when purchased. The fact that the actual weight of the marijuana was slightly less than its estimated weight is not sufficient to create a break in a proper chain of custody.Lott v. State, 456 So.2d 857, 861 (Ala.Cr.App. 1984) (Marijuana properly admitted despite discrepancy between the weight of the marijuana when it was weighed by two officers and later when it was weighed in the lab.); Murrell v. State, 377 So.2d 1102,1106-07 (Ala.Cr.App.), cert. denied, Ex parte Murrell,377 So.2d 1108 (Ala. 1979) (fact that bullet was missing from sealed package containing pistol cylinder switch did not preclude admission of switch into evidence where no other indication that package had been tampered with). See alsoVaughn v. State, 474 So.2d 1158, 1160-61 (Ala.Cr.App. 1985);Riggins v. State, 437 So.2d 631, 633-34 (Ala.Cr.App. 1983).
The record shows that Crawford purchased the "little package" of marijuana from the defendant and gave the package to District Attorney's Investigator Larry Ikner, who gave it to Gary Wallace at the "State lab" in Mobile. Wallace examined, tested the marijuana, and placed it in the evidence room. The marijuana was given to Deputy Sheriff Mitch Stuckey by Debra Sinnon of the State laboratory, who returned it to Ikner. Crawford, Ikner, and Wallace testified at trial. Each accounted for the integrity of the package of marijuana he had received. There is no contention that the marijuana was contaminated or altered in any way. Here, even though two witnesses who received the marijuana after it had been tested and determinedto be marijuana did not testify, we find that the chain of custody was sufficiently established to afford ample assurance of the authenticity of the marijuana. Ex parte Yarber,375 So.2d 1231, 1234 (Ala. 1979); Lowery v. State, 452 So.2d 897,898-99 (Ala.Cr.App. 1984); Adams v. State, 452 So.2d 904,905-06 (Ala.Cr.App. 1984); Thomas v. State, 356 So.2d 210,212-13 (Ala.Cr.App. 1977), cert. quashed, Ex parte Thomas,356 So.2d 214 (Ala. 1978).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.