The petitioner, Abe McCall, was convicted of trafficking in marijuana. McCall appealed to the Court of Criminal Appeals, which affirmed the conviction, without opinion. This Court granted the writ of certiorari.
McCall raises three issues for review: (1) Whether the trial court committed reversible error by denying his motion to dismiss the proceedings based on former jeopardy; (2) Whether the evidence was sufficient to sustain his conviction for trafficking in marijuana; and (3) Whether the trial court committed reversible error by refusing to allow him, during the presentation of the defense's case in chief, to call a confidential informant as an adverse witness for the purpose of impeaching his credibility.
The first issue raised by McCall concerns the trial court's grant of a mistrial. The first trial resulted in a mistrial because of prosecutorial misconduct. The second trial resulted in a mistrial being granted on the motion of the State. The third trial resulted in McCall's conviction. McCall contends that jeopardy attached at the granting of the second mistrial, barring subsequent proceedings.
It is clear that if jeopardy attached at the grant of the second mistrial, the third trial is barred by the prohibition against double jeopardy. Ala. Const. 1901, § 9; 5th and 14th Amendments to the United States Constitution. Jeopardy attaches when a mistrial is granted, unless there is manifest necessity for the mistrial. See Arizona v. *Page 1076 Washington, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). The dispositive question, then, is whether there was manifest necessity for the mistrial.
Eddie Lee Bradley, acting as a confidential informant, participated in the arrest and indictment of McCall. Although the State listed Bradley as a potential witness, it did not call him to the stand. During the presentation of the State's case, however, Bradley's name was mentioned and the role that he played was discussed.
At the close of the State's evidence, Bradley informed the court that he knew one of the jurors. The juror admitted upon examination by the court that she knew Bradley and that her son had once had a "run-in" with him. She also stated that she had no ill feelings toward him. The juror explained that the reason that she did not respond in the affirmative to the State's inquiry during voir dire as to whether any of the potential jurors knew Bradley was that a man coughed and she did not hear the question.
After the juror was sent out of the courtroom to rejoin the other jurors, Bradley testified. He testified that the juror did know him and that she disliked him. Bradley testified that he had dated the juror's daughter and that she did not like that arrangement.
When court was reconvened the next morning, the prosecutors told the court that it had been brought to their attention that the juror might be related to McCall's wife. The juror was again questioned by the court, and she stated that she was not related to the McReynolds family, of which McCall's wife was a member. She also testified that she had once been invited to a McReynolds family reunion, where she met a man who told her that he was related to her and her husband. When asked if she was related to McCall's wife, she said no.
After hearing counsel's arguments, the court stated:
 "The court is going to grant the motion for a mistrial on the basis that the juror did not adequately respond to the State's questions on voir dire. And the Court feels that there is a question of fundamental fairness involved here and that the end of justice necessitates a declaration of a mistrial."
This Court has held that a trial judge is allowed the exercise of broad discretion in deciding whether the high degree of necessity required for a mistrial is present. See, e.g., Woods v. State, 367 So.2d 982 (Ala. 1978). We hold that, in this case, the trial court did not abuse that discretion. The trial court noted that the juror did not adequately respond to the State's questions on voir dire. There is conflicting testimony in the record concerning the juror's relationship with Bradley, who, although not called by the State to testify, was shown by the State's evidence to have played a vital role in the arrest and subsequent indictment of McCall. Furthermore, although the juror denied being related to McCall's wife, there was evidence that she was on friendly terms with McCall's wife's family, and that she failed to disclose this fact on voir dire. The trial court is in a better position than this Court to determine the weight that is to be given to that testimony. We can not say from the record before us that the trial court abused its discretion in determining that a mistrial was a matter of manifest necessity. Because the trial court did not err in this determination, jeopardy did not attach at the grant of the mistrial and, therefore, the subsequent proceedings were not barred by the prohibition against double jeopardy.
McCall next contends that there was insufficient evidence to sustain his conviction for trafficking in marijuana. Ala. Code 1975, § 20-2-80(1), states that a person is trafficking in marijuana if he is in possession of more than 2.2 pounds of marijuana. McCall contends that the State did not prove that he was in possession of more than 2.2 pounds of marijuana but only that he was in possession of more than 2.2 pounds of "green plant material" that contained marijuana.
In Mulhern v. State, 494 So.2d 787 (Ala.Crim.App. 1986), the Court of Criminal Appeals held that the State must prove that the defendant was in possession of more *Page 1077 
than 2.2 pounds of marijuana and that proving that he was in possession of more that 2.2 pounds of green plant material containing marijuana is not sufficient. This Court adopted that requirement in Ex parte Sellers, 519 So.2d 1292 (Ala. 1987).
In the present case, the State called Debra Sennett as a witness. Sennett testified that she was employed by the State of Alabama, Department of Forensic Sciences. After testifying as to her qualifications, she testified that she received the green plant matter taken from McCall and weighed it. She testified that it weighed 2.52 pounds. She testified that after she weighed the material, she did a gross examination of all of the material and a chemical analysis of a portion of the material. She testified that the chemical analysis showed that the portion of the material that she tested was marijuana. She further testified that she determined from the gross examination that the remainder of the material was also marijuana.
In Mulhern and the cases following it, the evidence showed only that a portion of the material seized from the defendant contained marijuana. In this case, the lab technician testified that the entire amount of the material was examined and was found to be marijuana. We hold, therefore, that the State presented sufficient proof as to the amount of marijuana to support the conviction for trafficking.
McCall finally argues that the trial court erred by refusing to allow him, during the presentation of the defense's case in chief, to call Bradley as an adverse witness for the purpose of impeaching his credibility.
The record that reached this Court does not contain the exchange concerning this issue. Therefore, there is nothing for us to review. Moreover, after reading the parties' briefs, we conclude that this argument lacks merit.
There being shown no reversible error, the judgment of the Court of Criminal Appeals affirming McCall's conviction for trafficking in marijuana is due to be, and is hereby, affirmed.
AFFIRMED.
HORNSBY, C.J.,* and MADDOX, JONES, SHORES,* ADAMS,* HOUSTON, STEAGALL* and KENNEDY,* JJ., concur.
* Although Chief Justice Hornsby and Justices Shores, Adams, Steagall, and Kennedy did not sit at oral argument, they have studied the record and listened to the tapes of oral argument.