BOWEN, Judge.
Earl Presley was convicted for trafficking in marijuana, was fined $25,000, and was sentenced to life imprisonment without parole as a habitual felony offender. He raises four issues on this appeal froto that conviction.
I.
The defendant argues that the evidence was insufficient to show that he was in possession of more than 2.2 pounds of marijuana as required for a conviction for trafficking under Ala.Code 1975, § 20-2-80 (now § 13A-12-231(1)).
“This Court has recently held that in order to convict a person for trafficking in marijuana pursuant to Ala.Code 1975, § 20-2-80, the State has the burden of proving that the defendant possessed in excess of 2.2 pounds of the drug. Ex parte Sellers, 519 So.2d 1292 (Ala.1987); see also Borden v. State, 523 So.2d 508 (Ala.Crim.App.1987); Mulhern v. State, 494 So.2d 787 (Ala.Crim.App.1986).
[[Image here]]
“The State asserts that it met its burden of proving that Bohannon possessed in excess of 2.2 pounds of marijuana and that, pursuant to Dickerson v. State, 414 So.2d 998 (Ala.Crim.App.1982), the burden shifted to the defendant to prove that some portion of the total weight was excluded by the statute....
*1018 “Dickerson, supra, held:
“ ‘[T]he burden is upon the appellant to establish and bring himself within any exclusion which is found not in the enacting clause defining a crime but rather in a subsequent clause or statute. Specifically, he must establish that the mari[j]uana seized from his residence contained excludable matter falling within the definition of such under § 20-2-2(15).’
“Dickerson, 414 So.2d at 1002 (cites omitted). But, in order for the burden to shift, the State must first prove that the defendant possessed in excess of 2.2 pounds of marijuana, as the term is defined in § 20-2-2(15).”
Ex parte Bohannon, 564 So.2d 854, 857-58 (Ala.1988) (emphasis in original). See also Ex parte Sellers, 519 So.2d 1292 (Ala.1987).
“When a defendant is being prosecuted for trafficking in marijuana, pursuant to § 20-2-80, the burden is clearly on the state to prove that he was in possession of more than 2.2 pounds of marijuana, as that term is defined above [§ 20-2-2(15)]. Mulhern v. State, 494 So.2d 787 (Ala.Cr.App.1986). However, once the state has established the existence of the requisite amount of marijuana, the burden is then on the defendant, if he seeks to contest the validity of that weight, to show that there was matter contained in the material weighed which should have been excluded pursuant to § 20-2-2(15).”
Day v. State, 539 So.2d 410, 412 (Ala.Cr.App.1988).
In this case, on direct examination, forensic drug chemist Deborah Sennett testified that she “looked at all the material” contained in State’s exhibit 1, that “[t]he material was marijuana,” and that “[i]t weighed 2080 grams or 73.37 ounces or 4.59 pounds.” On cross-examination, she testified that a “[g]ross analysis was performed on the entire contents of the bag. A small portion of the plant material was removed for the chemical test.” A “gross analysis” means she “dumped the contents out and examined the entire contents for consistency.”
Ms. Sennett stated that the bag contained "a reasonable amount of seeds,” but did not “recall there being a lot of twigs.” The weight she testified to included everything that was in the bag, including “seeds and stalks and the twigs.” She did not determine whether the seeds were fertile or infertile.
However, Ms. Sennett testified that the 4.59 pounds “was the weight of the marijuana.” She did not testify that the 4.59 pounds was the weight of the green plant material which contained marijuana. Compare Mulhern v. State, 494 So.2d 787, 788 (Ala.Cr.App.1986). On redirect, she testified that the bag contained leaves and seeds and did not contain any part of the central stalk of the marijuana plant. She again testified that the material in the bag was marijuana. See Day, 539 So.2d at 412-13.
At the close of the State’s case-in-chief, the defendant made a motion for a judgment of acquittal due to the State’s failure to prove possession of more than 2.2 pounds of marijuana. During argument of that issue, the following occurred.
“MR. GODWIN [district attorney]: We specifically excluded the mature stalk in her testimony. All we are talking about is a few seeds that Mr. Harden [defense counsel] has reference to. We’ve shown that’s all part of marijuana. That was her testimony. Everything in that bag was marijuana.
“THE COURT: She did say that.... Well, as I understood Ms. Sennett’s testimony, she said everything in the bag was marijuana and the Code tells us what marijuana is.... She was not even asked by the Defendant whether or not those seeds were capable of germination....”
With the exception of the mention of seeds in this case, Ms. Sennett’s testimony in this case is substantially similar to her testimony in Ex parte McCall, 541 So.2d 1075, 1077 (Ala.1989), which, with regard to the weight of the marijuana, was found sufficient to support a conviction for trafficking:
*1019 “She testified that after she weighed the material, she did a gross examination of all of the material and a chemical analysis of a portion of the material. She testified that the chemical analysis showed that the portion of the material that she tested was marijuana. She further testified that she determined from the gross examination that the remainder of the material was also marijuana.”
McCall, 541 So.2d at 1077.
Marijuana, or “marihuana,” is defined in Ala.Code 1975, § 20-2-2(15), as:
“All parts of the plant Cannabis sativa L., whether growing or not, the seeds thereof, the resin extracted from any part of the plant and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin. Such term does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil or cake or the sterilized seed of the plant which is incapable of germination.”
In this case, there was no testimony that any of the seeds were sterilized. “Under § 20-2-2(15), seeds are not excluded from the definition of marijuana unless they are sterilized. The burden of establishing such is upon appellant. Having failed to do so, we find that inclusion of the seeds for weighing purposes was not error.” Dickerson v. State, 414 So.2d 998, 1003 (Ala.Cr.App.1982) (citation omitted).
Although some of defense counsel’s questions to Ms. Sennett referred to “twigs,” our consideration of all of the testimony leads to the conclusion that the “bag” contained stems but not stalks. In conjunction with Ms. Sennett’s testimony, there was testimony from Atmore police officer Charles Ellaird that he and detective Darrel Ledkins “stripped” the plant material off the “stalks” and “branches” and placed what they had stripped off in a plastic garbage bag, State’s exhibit 1. Detective Ledkins testified that they “[s]tripped the leaves off of the stalks” and put the “leaves” in a garbage bag.
We find that the State presented prima facie evidence that the defendant was in possession of more than 2.2 pounds of marijuana and that the defendant failed to go forward and show that State’s exhibit 1 contained any excludable material. The defendant’s motion for a judgment of acquittal was properly denied. Wright v. State, 570 So.2d 872 (Ala.Cr.App.1990); Day, 539 So.2d at 412-13. See also Higdon v. State, 527 So.2d 1352, 1354 (Ala.Cr.App.1988) (the forensic lab analyst testified that there were some seeds in the bag but that they represented only an “insignificant” amount of the material).
II.
The trial court did not abuse its discretion in preventing defense counsel from cross-examining the state chemist on her knowledge of what parts of the marijuana plant are illegal under the Controlled Substances Act of the Code of Alabama. “A witness, be he expert or lay, cannot give his opinion when such constitutes a legal conclusion or the application of a legal definition.” C. Gamble, McElroy’s Alabama Evidence § 128.07 (3d ed. 1977), and cases cited therein. “ ‘It may be laid down as a general rule that a witness is never permitted to give his opinion on a question of law or upon matters which involve a question of law. This rule is applicable to both expert and non expert witnesses.’ ... The reason for such rule is that conclusions of law are exclusively for the courts.” Fiorella v. City of Birmingham, 35 Ala.App. 384, 388-89, 48 So.2d 761, 766, cert. denied, 254 Ala. 515, 48 So.2d 768 (1950), cert. denied, 340 U.S. 942, 71 S.Ct. 506, 95 L.Ed. 680 (1951).
Defense counsel did not attempt to cross-examine Ms. Sennett on which parts of the marijuana plant contain tetrahydrocannabinol. See Dickerson, 414 So.2d at 1002 (defining “cannabis”). Counsel was not prohibited from questioning the witness about the specific contents of the garbage bag (such as mature stalks, fibers produced from the stalks, cake made from the seeds, *1020 or sterilized seed) which are specifically excluded from the definition of marijuana by statute. The trial court properly sustained the State’s objections to defense counsel’s attempts to elicit Ms. Sennett’s legal opinions and knowledge of the law.
III.
At the conclusion of the court’s oral instructions, the jury was given a recess, and defense counsel made his objections to the court’s oral charge. When the jury returned to the courtroom, the trial judge instructed the jury pursuant to defense counsel’s request. While the judge stated that it had been “pointed out” to him that he had, in effect, made some misstatements, he did not indicate which side “pointed out” the matters to the court. After the jury retired to begin its deliberations, defense counsel took “exception” to the court’s supplemental instructions on the grounds that the trial court had instructed the jury that it must be “satisfied,” instead of “convinced” beyond a reasonable doubt. At the request of defense counsel and with the consent of the prosecution, the trial court gave the following additional instructions to the jury in another courtroom which the jury was using as a jm;y room.
“THE COURT: We decided to come to y’all this time.
“One final point that I meant to state when you came back over. It’s been pointed out the word that I have used, you must be ‘satisfied’ beyond a reasonable doubt, there has been an objection to the word ‘satisfied.’ The Court has been requested or it has been pointed out to the Court that the word should be you must be ‘convinced’ beyond a reasonable doubt.
“So I instruct you that you must be convinced beyond a reasonable doubt of the Defendant’s guilt before you can find him guilty. Not just satisfied beyond a reasonable doubt. So the word is ‘convinced’ rather than ‘satisfied.’

“Anything else, Mr. Harden?

“MR. HARDEN: Other than we have a motion that we would like to make with Your Honor. You want me to do it in the presence of the jury?
“THE COURT: Is it the same motion that’s been made?[1]
“MR. HARDEN: Yes, sir.
“THE COURT: We will do it when we get back. Are you satisfied with that instruction?
“MR. HARDEN: That states a correct proposition of law, yes, sir.”
(Emphasis and footnote added.)
Outside the presence of the jury, defense counsel requested a mistrial because of the cumulative effect of the trial court’s repeated use of the word “satisfied” instead of “convinced.” After the trial court denied that motion, defense counsel requested a mistrial because the trial court asked him if he was “satisfied.”
“Judge, we also move for a mistrial on the grounds that we were required in the jury room — You asked the Defendant’s attorney, ‘Mr. Harden, are you satisfied with that charge?’ We think that that focused the attention on this Defendant after having instructed the jury you were in there to clear up a matter that had been objected to.
“We think that creates a prejudicial situation, a prejudicial atmosphere toward this Defendant, and we respectfully move for a mistrial.”
To the extent that the trial judge’s inquiry into whether defense counsel was “satisfied” indicated that the supplemental instructions he had just given had been given at the request of the defendant, the judge’s inquiry was improper. However, we do not think that it rises to the level of *1021 reversible error under the circumstances of this case.
Rule 14, A.R.Crim.P., provides in part, “Each request marked ‘given’ shall be read to the jury without reference as to which party filed the request.” A trial court should not identify for the jury which party requested or submitted portions of his oral instructions. Thompson v. State, 473 So.2d 1205, 1210 (Ala.Cr.App.1985); see Jones v. State, 392 So.2d 1270, 1271 (Ala.Cr.App.1980), cert. denied, 392 So.2d 1273 (Ala.1981); cf. Hogan v. Alabama Power Co., 351 So.2d 1378, 1385-86 (Ala.Civ.App.), cert. denied, 351 So.2d 1388 (Ala.1977) (applying Rule 51, A.R.Civ.P., which contains language identical to that quoted from Rule 14 above).
In a case such as this, if the trial court asked one side if it was satisfied, it also should have asked the other. However, the trial court was certainly not castigating defense counsel, and we do not interpret the court’s instructions as “blaming” defense counsel for the interruption of the jury’s deliberations. Furthermore, the trial court’s comments did not in any way assail the validity and legality of the principle contained in the supplemental instructions.
“The mere fact that a judge’s conduct is inappropriate is not necessarily a sufficient ground for reversal.” White v. State, 546 So.2d 1014, 1028 (Ala.Cr.App.1989). “[M]erely because a judge’s conduct is inappropriate, such conduct is not necessarily a sufficient ground for reversal by this court, particularly in the absence of a showing by the complaining party that the action taken by the court was inconsistent with substantial justice or materially prejudiced the complaining party.” Stewart v. Stewart, 354 So.2d 816, 820 (Ala.Civ.App.1977), cert. denied, 354 So.2d 822 (Ala.1978).
“In reviewing the alleged impropriety of the comments of a trial judge, we are guided by certain general principles:
“ ‘In reviewing this case, we are limited to the facts reflected in the record and the fair and reasonable inferences which they afford.’ ...
“ ‘ “Remarks by the trial judge may be open to criticism, but they are not error unless they have affected the result of the trial. It is not every erroneous expression of opinion by a trial judge, during trial, that will furnish a ground for reversal. To do so it must, in some manner, influence the result of the cause, or be supposed to do so. Each case rests upon its own peculiar facts and circumstances.” ’ (citations omitted)
“ ‘There is no ironclad rule by which the prejudicial character of the improper conduct and comments of a trial judge can be ascertained in all cases, most depending on the issues, parties, and the general circumstances of each particular case.’ ”
White v. State, 546 So.2d at 1028 (citations omitted).
The judge’s question was not couched in intemperate language, and, apparently, was not designed to influence the jury toward one side or the other. We find that his question does not warrant a reversal of this conviction. There is nothing in the record to indicate that the jury was “tired and impatient” as alleged by the defendant in his brief. Appellant’s brief at 39. The trial lasted only two days and we find no merit to the defendant’s argument that the statements by the trial court “drew the attention of the jury to the fact that [the defendant] was once again prolonging the trial.” Appellant’s brief at 41.
IV.
The defendant argues that the State failed to establish a proper chain of custody of State’s exhibit 1, the bag of marijuana.
The defendant argues that there were four breaks in the chain of custody because 1) three officers each had a key to the evidence room at the police station; 2) Ms. Sennett, who tested the material, was not certain whether or not she wrote the case number on the box into which State’s exhibit 1 had been placed; 3) the person who returned the exhibit from the forensic laboratory to the police station did not testify at trial; and 4) there was conflicting *1022 testimony over when the exhibit was returned from the laboratory.
At best, the defendant has only established the possibility that there were “weak links” in the chain of custody. “Where a weak link in the chain of custody is found, the weight and credit afforded the evidence, rather than its admissibility, is questioned.” Ex parte Williams, 548 So.2d 518, 520 (Ala.1989). The prosecution is not required to “negate the most remote possibility of substitution, alteration, or tampering with the evidence, but rather must prove to a reasonable probability that the item is the same as, and not substantially different from, the object as it existed at the beginning of the chain.” Williams, 548 So.2d at 520 (quoting Ex parte Williams, 505 So.2d 1254, 1255 (Ala.1987)). Even though the person who returned the exhibit from the laboratory did not testify in this case, the witnesses at trial accounted for the integrity and authenticity of the garbage bag containing the marijuana through each link in the chain of custody.
Any conflict in the witnesses’ testimony affected the credibility but not the admissibility of that testimony. “[Conflicts of testimony concerning the chain of custody go to the credibility rather than the admissibility of the evidence.” Lott v. State, 456 So.2d 857, 861 (Ala.Cr.App.1984). Accord, Reed v. State, 547 So.2d 594, 595 (Ala.Cr.App.1988), reversed on other grounds, 547 So.2d 596 (Ala.1989); Carlisle v. State, 533 So.2d 645, 652 (Ala.Cr.App.1987); Stevens v. State, 506 So.2d 373, 375-76 (Ala.Cr.App.1986); Slaughter v. State, 411 So.2d 819, 823 (Ala.Cr.App.1981). Compare Battles v. State, 491 So.2d 1025, 1030-32 (Ala.Cr.App.1985) (testimony could not reasonably be reconciled).
In the following cases a proper chain of custody was established even though someone in the chain of custody did not testify at trial: McCray v. State, 548 So.2d 573, 575-76 (Ala.Cr.App.1988) (no evidence of who received exhibits at state forensic lab); Williams v. State, 548 So.2d 516, 517 (Ala.Cr.App.1988), affirmed, 548 So.2d 518 (Ala.1989) (forensic laboratory analyst who received the cocaine from the police and delivered it to the forensic chemist did not testify); Williams v. State, 535 So.2d 193, 196 (Ala.Cr.App.1986), cert. denied, 535 So.2d 197 (Ala.1987) (individual who took custody of drugs at Department of Forensic Sciences did not testify); Stevens v. State, 506 So.2d at 375-76 (“even though two witnesses who received the marijuana after it had been tested and determined to be marijuana did not testify, we find that the chain of custody was sufficiently established to afford ample assurance of the authenticity of the marijuana”); Lowery v. State, 452 So.2d 897, 898-99 (Ala.Cr.App.1984) (Ms. Sennett, whose name appeared on the evidence envelope, did not testify); Sexton v. State, 346 So.2d 1177, 1179-80 (Ala.Cr.App.), cert. denied, 346 So.2d 1180 (Ala.1977) (chain of custody allegedly broken after the marijuana had been examined by the state toxicologist and handed over to a court reporter in a previous trial of the defendant); Congo v. State, 409 So.2d 475, 479 (Ala.Cr.App.1981), cert. denied, 412 So.2d 276 (Ala.1982) (property custodian who received drugs from toxicologist after analysis did not testify).
In this case, the identity and continuity of the possession of the marijuana were sufficiently shown to afford ample assurances of authenticity and integrity.
Our review convinces this Court that the defendant received a fair trial. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.

. Apparently, this has reference to defense counsel’s motion at the conclusion of the first oral charge of the trial court that "since there are so many times that that charge [‘satisfied’ instead of ‘convinced’] was given, that the cumulative effect has prejudiced to the point that we don’t feel like it can be eradicated, and we respectfully, therefore, move for a mistrial.” Defense counsel renewed this motion outside the presence of the jury after the conclusion of all of the trial court's supplemental instructions.