587 So.2d 1022 (1991)
Ex parte Earl PRESLEY.
(Re Earl Presley v. State).
1900485.
Supreme Court of Alabama.
July 19, 1991.
*1023 Paul M. Harden and Anthony J. Bishop, Evergreen, and Hugh Rozelle, Atmore, for petitioner.
James H. Evans, Atty. Gen., and Joseph G. L. Marston III, Asst. Atty. Gen., for respondent.
ALMON, Justice.
Earl Presley was convicted of trafficking in marijuana, in violation of Ala.Code 1975, § 20-2-80.[1] He received a sentence of life imprisonment without the possibility of parole and was ordered to pay a $25,000 fine. The Court of Criminal Appeals affirmed Presley's conviction, Presley v. State, 587 So.2d 1016 (Ala.Crim.App.1990), and this Court granted Presley's petition for the writ of certiorari to review the following issue: Whether the Court of Criminal Appeals' affirmance of Presley's conviction conflicts with this Court's opinion in Ex parte Bohannon, 564 So.2d 854 (Ala.1988), and the Court of Criminal Appeals' opinion in Ray v. State, 549 So.2d 518 (Ala.Crim. App.1989).
During Presley's trial, the State's toxicologist, Deborah Sennett, testified that she performed a gross examination of the material seized from Presley. She also performed chemical and microscopic analyses on portions of the material. She stated that, in her opinion, the material was "marijuana," and that it weighed 2080 grams or 4.59 pounds. During cross-examination, Sennett acknowledged that the material contained "a reasonable amount" of seeds and that all of those seeds were included in the material that she weighed. Sennett also testified that she did not perform any tests on the seeds to determine if they were fertile, sterile, or sterilized, and that she never weighed the seeds separately. Following Sennett's testimony, Presley moved for a judgment of acquittal, arguing that Sennett's failure to determine if the seeds met the statutory definition of marijuana rendered their inclusion in the material weighed improper, and that, as a result, there was insufficient evidence to support a conviction for trafficking in marijuana. The court denied Presley's motion.
In order to secure a conviction for trafficking in marijuana, the State must show that the defendant was in possession of more than 2.2 pounds of that substance, as it is defined in Ala.Code 1975, § 20-2-2(15):
"Marihuana. All parts of the plant Cannabis sativa L., whether growing or not, the seeds thereof, the resin extracted from any part of the plant and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin. Such term does not include the mature stalks of the plant, *1024 fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil or cake or the sterilized seed of the plant which is incapable of germination."
(Emphasis added.)
In Dickerson v. State, 414 So.2d 998 (Ala.Crim.App.1982), the Court of Criminal Appeals recognized that sterilized seeds are not within the definition of marijuana set out in § 20-2-2(15), but held that the "burden" of establishing that seeds that had been weighed by the State had been sterilized, and were therefore excludable, was on the defendant. 414 So.2d at 1003. Under the procedure set out in Dickerson, the State could weigh the plant material that it seized, including all seeds, without testing them to ensure that they met the statutory definition of marijuana. This procedure of placing a "burden" on the defendant to bring himself within an exclusion set out in § 20-2-2(15) was followed in other opinions by the Court of Criminal Appeals. See, e.g., Sterling v. State, 421 So.2d 1375 (Ala.Crim.App.1982); and Weaver v. State, 418 So.2d 202 (Ala.Crim.App. 1982).
However, in Ex parte Bohannon, 564 So.2d 854 (Ala.1988), this Court did away with the "burden-shifting" analysis set out in Dickerson and its progeny. In Bohannon, the toxicologist testified that the plant material he weighed was marijuana, and that it weighed 3.5 pounds. The toxicologist also testified that the material he weighed contained seeds and that he had not tested those seeds before weighing the plant material to determine if they had been sterilized. 564 So.2d at 858. This Court reversed Bohannon's conviction, holding that the toxicologist's failure to test or weigh the seeds rendered improper their inclusion in the material that was weighed. Id. In doing so, we made a clear departure from the procedure that had been adopted by the Court of Criminal Appeals in Dickerson and its progeny. Instead of allowing the State to establish a prima facie case by weighing all of the plant material that it seizes, thereby shifting the "burden" to the defendant, this Court held that the State must prove that all of the material that it relies on to equal 2.2 pounds was marijuana, as the term "marijuana" is defined by statute:
"[I]n order to prove that the material the toxicologist weighed contained in excess of 2.2 pounds of statutorily defined marijuana, the State must prove that the seeds were not `sterilized.'"
Id.
The Court of Criminal Appeals followed Bohannon in Ray v. State, 549 So.2d 518 (Ala.Crim.App.1989). In Ray, Deborah Sennett also testified as the State's expert. She testified that she analyzed the seized material and that, in her opinion, it was 4.9 pounds of marijuana. 549 So.2d at 518. On appeal, Ray argued that the State's burden was not simply to prove that the aggregate of seized plant material and seeds containing marijuana weighed in excess of 2.2 pounds, but that all of the material actually weighed, including the seeds, satisfied the statutory definition of marijuana. 549 So.2d at 519.
The Court of Criminal Appeals, citing Bohannon, agreed with Ray's argument and reversed his conviction:
"In the case at bar, just as in Bohannon, the toxicologist weighed the stems and seeds in determining the weight of the green plant material. However, the toxicologist did not test the seeds to determine if they were sterile or infertile. Therefore, as stated in Bohannon, supra, in order to prove that the material the toxicologist weighed contained in excess of 2.2 pounds of statutorily defined marijuana, the State must prove that the seeds were not `sterilized.' In the case at bar, as in Bohannon, the toxicologist testified that in her opinion some of the seeds were probably infertile or nongerminating, but she did not test the seeds to determine if that was the case. Pursuant to the Supreme Court's ruling in Bohannon, supra, this testimony is not sufficient to meet the burden of proof.

*1025 "....
"... [B]ecause ... seeds were weighed with the remainder of the plant material, and because there was no testimony as to whether the seeds could be included or not, the State failed to prove that [Ray] possessed in excess of 2.2 pounds of marijuana.
"... [Therefore, his] conviction for trafficking in cannabis is due to be, and it is hereby, reversed."
549 So.2d at 519-20 (emphasis added).
The relevant facts in this case are virtually indistinguishable from those in Bohannon and in Ray.[2] In each case, the State's toxicologist testified that the plant material weighed was marijuana and was in excess of 2.2 pounds. In each case, the toxicologist testified that seeds were weighed with the other plant material and that those seeds were never tested to see if they met the statutory definition of marijuana. Because the State failed to establish that the seeds it weighed were "marijuana," as that term has been defined by our legislature, the trafficking convictions in Bohannon and Ray were reversed due to insufficient evidence. This Court is bound by the definitions that our legislature adopts, as are district attorneys and defendants in criminal cases. Therefore, Presley's conviction is also due to be reversed.
This Court hopes that this opinion, when read in conjunction with the opinions in Bohannon and Ray, will clarify any confusion regarding the State's burden in marijuana trafficking cases. In that vein, we feel compelled to address the improper use of language by both the bench and bar that implies that the "burden of proof" shifts to the defendant in these cases. The burden of proof, as that term is properly used, does not shift to the defendant. It remains on the State to prove every element of the offense charged in order to establish the defendant's guilt beyond a reasonable doubt. If the State puts on a prima facie case, the defendant can then do one of two things: (1) he can rest and risk conviction; or (2) he can come forward with exculpatory evidence or evidence of defensive matters. At any rate, it can not be properly said that the burden of proof shifts to the defendant. Buckles v. State, 291 Ala. 359, 280 So.2d 823 (1973), setting aside Buckles v. State, 291 Ala. 352, 280 So.2d 814 (1972); Eldridge v. State, 415 So.2d 1190, 1194 (Ala.Crim.App.1982).
This may seem like a very narrow or subtle distinction, but it is not:
"There is a manifest distinction ... between the burden of proof and the burden of adducing evidence, also known as the burden of explanation, and, while the burden of proof never shifts, the burden of adducing evidence may shift from side to side according to the testimony, and it may require [the] accused to produce testimony for himself or suffer an inference of guilt from the facts already proved to be drawn against him by the jury."
22A C.J.S. Criminal Law, § 688 at 325 (1989) (emphasis added). There are, of course, situations where a defendant is required to assume the burden of proof, such as when a defendant offers the defense of insanity. Ala.Code 1975, § 13A-3-1; Hill v. State, 507 So.2d 554 (Ala.Crim.App. 1986), cert. denied, Ex parte Hill, 507 So.2d 558 (Ala.1987). Usually these situations, e.g., the offer of an insanity defense, arise where the defendant has a burden of establishing a special plea. In the insanity situation, the issue is the defendant's mental competency to commit the crime, rather than whether he actually committed the act or acts charged by the State.
For the reasons set out above, the Court of Criminal Appeals' judgment affirming Presley's conviction is reversed, and this case is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and ADAMS, HOUSTON, KENNEDY and INGRAM, JJ., concur.
MADDOX and STEAGALL, JJ., dissent.
*1026 MADDOX, Justice (dissenting).
The following facts seem to be uncontroverted. On September 23, 1988, there was a fire at a house in Atmore, Escambia County, Alabama. The appellant identified the house as his and had a key, which he used to admit the fire chief to the front door. While the firemen were in the process of putting out the fire, they noticed the appellant removing green plants[3] from the roof of the house, carrying them to the back of the lot and covering them with a piece of carpet. The firemen called the police.
Detective Sergeant Charles Ellaird and Investigator Darrel Ledkins investigated and took custody of the appellant. Detective Ellaird testified that a couple of firemen helped him to bundle the green plants, later identified as marijuana. He said he then placed the bundle in the trunk of the squad car.
The marijuana was locked in the evidence room at the Atmore Police Department. On September 27, 1988, Ellaird and Ledkins stripped the leaves from "exactly 84 stalks" in the bundle, and delivered the leaves to Chief Glenn Carlee. At this time, the stalks were in the exact same position in the evidence room that they had been placed in immediately after seizure. They were in the exact same condition except that they were a little drier. After stripping the leaves, the investigators put them in a plastic bag, which they sealed. The sealed bag was delivered to the chief, who took it to the Department of Forensic Sciences.
The sealed bag was transported by Chief Carlee to the Department of Forensic Sciences in Mobile and was turned over, still sealed, to Forensic Scientist Debra Sennett. The material was stored sealed in a safe until it could be tested.
Ms. Sennett examined the material submitted to her by observation and microscopic examination of the whole mass and by chemical testing of a randomly selected representative sample. Based on this, Ms. Sennett concluded that the entire mass was marijuana and that it weighed 4.59 pounds.
The evidence bag was then resealed and placed in a box, which was itself sealed. The sealed box was returned to Investigator Ledkins and was stored under lock and key until the day of trial.
According to the opinion of the Court of Criminal Appeals, the following represents what was contained in the exhibit admitted into evidence that the state's toxicologist testified weighed 4.59 pounds:
"Although some of defense counsel's questions to Ms. Sennett referred to `twigs,' our consideration of all of the testimony leads to the conclusion that the `bag' contained stems but not stalks. In conjunction with Ms. Sennett's testimony, there was testimony from Atmore police officer Charles Ellaird that he and detective Darrel Ledkins `stripped' the plant material off the `stalks' and `branches' and placed what they had stripped off in a plastic garbage bag, State's exhibit 1. Detective Ledkins testified that they `[s]tripped the leaves off of the stalks' and put the `leaves' in a garbage bag.
"We find that the State presented prima facie evidence that the defendant was in possession of more than 2.2 pounds of marijuana and that the defendant failed to go forward and show that State's exhibit 1 contained any excludable material. The defendant's motion for a judgment of acquittal was properly denied. Wright v. State, 570 So.2d 872 (Ala.Cr. App.1990); Day [v. State], 539 So.2d [410] at 412-13 [Ala.Cr.App.1988]. See also Higdon v. State, 527 So.2d 1352, 1354 (Ala.Cr.App.1988) (the forensic lab analyst testified that there were some seeds in the bag but that they represented only an `insignificant' amount of the material."
The burden of proof is on the State, of course, to prove that petitioner did, in fact, possess more than 2.2 pounds, but if there ever was a case in which the state met its *1027 burden of proving that a person possessed more than 2.2 pounds of marijuana, it was this case.
The marijuana was on the petitioner's roof; it had roots and was "green"; petitioner attempted to secure and secrete the plant material. The evidence unquestionably shows that the leaves were stripped from 84 stalks, identified and later transported to the lab. According to the opinion of the Court of Criminal Appeals, there were admittedly some seeds included in the material. I have not examined the exhibit, but is there any reasonable doubt that the material in the exhibit was prohibited material, although there is no evidence that the state actually tested the seeds to see if they had been artificially sterilized, the only obvious exception included in the statute? Of course not.
Does the majority hold that the state must prove a negativethat the seeds have not been artificially sterilized? Clearly, the exception in the statute refers to seeds that have been sterilized. The plants here still had their roots, they were green, there were 84 of them, 5 to 6 feet tall. Even if the State were required to prove the negativethat the seeds were not sterilizedthe State proved the negative by proving the positiveExhibit 1 contained green leafy marijuana with some seeds and twigs (not excludable stalks) in it.
During oral arguments, counsel for the petitioner admitted that there could be legitimate uses for "stalks" and seeds that had been artificially sterilized. That is the purpose of the exception. There is no doubt in my mind that the State proved that the material contained in Exhibit 1 was a prohibited substance. Consequently, I must disagree with the opinion that concludes otherwise.
STEAGALL, J., concurs.
NOTES
[1] Section 20-2-80, the Code section setting out the elements of the offense of trafficking in marijuana, was transferred to § 13A-12-231 by Acts 1988, No. 88-918, p. 512, § 2.
[2] We note that the instant case, Bohannon, and Ray, are clearly distinguishable from Ex parte McCall, 541 So.2d 1075 (Ala.1989). The opinion in McCall made no mention of seeds or other excludable material, and therefore does not conflict with Bohannon or Ray.
[3] Testimony offered at trial gave the following descriptions of the green plants: "plants that still had roots," "some bushes ... green and approximately 4 to 5 feet," "bunch of plants," "a bundle like, green plants, leafy ... it was a bunch of them."