Appellant John D. Lott, Jr. was indicted by the Dale County Grand Jury for the offense of trafficking in marijuana. Lott was convicted and sentenced to ten years' imprisonment. In addition, he was fined $25,000.00 plus costs.
The facts as they are revealed by the State's case in chief show that an informant, Army Sergeant Robert Boyd, told the Dale County Sheriff's Department that he would set up a buy of marijuana from the appellant. The informant arranged a meeting and told the Sheriff's Department that if marijuana were in the car in which he and appellant would be driving, he would scratch the back of his head. At a pre-arranged time, Narcotics Investigator Bill Moore spotted a vehicle in which Boyd, appellant, and another individual were riding. Shortly thereafter, Boyd scratched the back of his head, and the authorities stopped the vehicle.
Investigator Moore identified himself to the occupants of the car. He asked appellant to step out of the car, which he did. Moore requested and received Lott's driver's license. At that time, Officer Edwards of the Ozark Police Department drove up. He identified himself to the occupants of the car and told them he had reason to believe they were transporting marijuana. He asked if he could search the car, and Lott consented. Officer Moore took the keys of the car and opened the trunk. He smelled the odor of marijuana, and a large quantity of the drug was found in an unsealed garbage bag in the trunk.
Four issues are raised on appeal.
 I
Lott first contends that the warrantless search of the automobile he was driving was illegal because he claimed he was not under arrest at the time of the search and he never gave consent for the search. There are several well-delineated exceptions to the requirement that a search warrant must be obtained before a legal search may be conducted. See C. Gamble,McElroy's Alabama Evidence, Sections 334.01 (3), 334.01 (7) (3rd ed. 1977). One of these exceptions allows the Fourth Amendment privilege to be waived by consent. The exception provides that:
 "[A] consent to an illegal search is a waiver of the constitutional protection from unreasonable searches and seizures. The burden is upon the prosecution to show, by clear and convincing evidence, that consent was knowingly and freely given. When the subject of a search is not in custody, and the state attempts to justify a search on the basis of his consent, the Fourth Amendment requires that the state demonstrate that the consent was in fact voluntarily given and not the result of duress or coercion, expressed or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse the search is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. The burden of proof that is to be borne by the prosecution in proving a valid consent is no greater than proof by a preponderance of the evidence." C. Gamble, McElroy's Alabama Evidence, Section 334.01 (3)(b) (3rd ed. 1977).
There is ample evidence to show that appellant consented to the search of the automobile trunk. A relevant portion of the transcript reads as follows:
 "Q. At the time of the arrest, Mr. Moore, did you — excuse me, at the time you stopped the Defendant's automobile, would you tell me what authority you gained from him in order to obtain a search of his vehicle?
"A. He gave his permission.
"Q. He gave you permission?
 "A. He gave us permission jointly. He said, `You may search.'"
Even if the consent given was not sufficient to justify the search, we feel the exigency of the circumstances justified the actions of the police officers. The law is *Page 860 
clear that a warrantless search of an automobile is justified where there is probable cause to believe the vehicle contains contraband. C. Gamble, McElroy's Alabama Evidence, Section 334.01 (7)(b) (3rd ed. 1977).
In the instant case, authorities had been told that appellant would be driving a car containing a quantity of marijuana at a particular time and place. At that time and place, appellant appeared, driving a vehicle. The informant signalled the police that marijuana was in the car. The test for probable cause is "whether the facts available to the officer at the moment of the seizure or search, would warrant a man of reasonable caution to believe that the action taken was appropriate." McElroy's, supra, Section 334.01 (7)(b).
Certainly, under this standard, the officers' actions were appropriate.
Although appellant argues that a search warrant should have been secured before the search, we cannot agree. Neither the informant nor the authorities knew in what type of vehicle the appellant would choose to hide the contraband. Under the circumstances, obtaining a warrant would not have been practicable. Thus, we find no merit in appellant's first issue.
 II
Appellant next claims that the State failed to prove that he had knowledge that the vehicle he was driving contained contraband. We agree that where the State relies on constructive possession to prove its case there must be a showing of guilty knowledge. See Alabama Digest, Drugs and Narcotics, Key No. 64 and cases cited therein. Mere presence in a vehicle containing illegal drugs is not sufficient to prove knowledge. Cason v.State, 435 So.2d 200 (Ala.Crim.App. 1983). However, the evidence provided ample proof that Lott was aware of the marijuana hidden in the car trunk.
On September 25, 1981, the appellant went to the Ozark Police Department with his attorney and made a statement in which he admitted having knowledge of the marijuana found in the car. The appellant waived his Miranda rights at the time he made the statement; the trial court determined that the statement was voluntary and allowed testimony concerning the statement into evidence at trial. Since we have determined that the statement was indeed voluntary (see discussion in Section IV below) we find that the confession, coupled with the information supplied by the informant, can only lead to the conclusion that appellant had knowledge of the marijuana concealed in the vehicle he was driving.
 III
Appellant contends that the chain of custody of the seized contraband was broken and therefore the marijuana was not properly admissible into evidence. We cannot agree. The evidence as shown through the testimony of Officer Bill Moore and Drug Analyst Joe Saloom reveals the following:
After discovering the marijuana in the trunk of the car, Moore called for Officer Edwards. Moore handed the bag of contraband to Edwards, and, after placing the suspect under arrest, the two officers proceeded to the police station in separate cars. Moore followed the Edwards car directly to the station. After arriving, the two officers weighed the marijuana and determined that it totalled 10.3 pounds. Then Officer Moore observed Officer Edwards seal up the marijuana, initial the seal, and lock the marijuana in Edwards's evidence locker. Officer Edwards was the only officer to have access to the locker. Later, the two officers met to take the marijuana to the crime lab. At that time Officer Moore observed that the bag containing the evidence was in the same condition as it had been at the time it was placed in Officer Edwards's locker. The officers took the bag to Analyst Joe Saloom, at which time they observed him open the package in their presence. Officer Moore stated that the evidence was in the same condition as when it was placed in the bag. *Page 861 
A relevant portion of the transcript dealing with Moore's observations reads as follows:
 "Q. You don't know that Billy Edwards — from the time that you last saw it until the time you next saw it that he couldn't have opened it perhaps to weigh the contents again, and then resealed it with the same tape, and wrote his initials on it?
"A. I would say he would not.
"Q. Well, but you don't know that he did not?
 "A. It looked identically the way it was before. I would say he did not.
"Q. Tell me and the Jury where the bag was wrinkled?
"A. That bag was wrinkled throughout.
 "Q. How was it wrinkled so characteristically that you can be certain that it had not been reopened?
 "A. Well, if it had been reopened the plastic would have torn. There would have been a hole in the tape over it. It would have damaged the container.
"Q. And you inspected that container?
 "A. Yes, prior to sealing it up — it has to be a sealed container going to the lab.
 "Q. You inspected it when it returned into observation at the lab?
"A. Yes, sir.
 "Q. And it is your testimony that beyond any doubt that was the same bag that Billy Edwards — and Billy Edwards could not have, under any circumstances, secured another bag and had it wrinkled or opened that bag perhaps to weigh the contents and reseal it with his initials?
"A. Yes, sir.
 "Q. You're saying that you are absolutely certain of that?
"A. Yes, sir."
The record also indicated that the drug analyst observed that when the bag was brought to him the seal had not been broken. In addition, he saw the initials "B.E." on the seal.
It is true that conflicting evidence existed concerning the marijuana. There was discrepancy between the weight of the marijuana at the time it was weighed by the two officers and later when it was weighed in the lab. However, it was determined, after the discrepancy was discovered, that the scales used by the officers were not in working order. In any event, conflicts of testimony concerning the chain of custody go to the credibility rather than the admissibility of the evidence. Slaughter v.State, 411 So.2d 819 (Ala.Crim.App. 1981).
In order to establish the necessary chain of custody, it must be shown to a "reasonable probability" that the evidence is not substantially different from the way it was at the time it was seized. Slaughter, supra.
We conclude from an examination of the record in the instant case that such a showing was indeed made.
 IV
The last issue appellant raises is whether error occurred when evidence was admitted during trial concerning an inculpatory statement he made to police officers of the Ozark Police Department. Appellant claims that he was induced to make the statement in return for a recommendation for probation. Appellant cites Section 20-2-81, Code of Alabama 1975, which states in pertinent part as follows:
 "(b) The prosecuting attorney may move the sentencing court to reduce or suspend the sentence of any person who is convicted of a violation of this article and who provides substantial assistance in the identification, arrest, or conviction of any of his accomplices, accessories, co-conspirators, or principals. The arresting agency shall be given an opportunity to be heard in aggravation or mitigation in reference to any such motion. Upon good cause shown, the motion may be filed and heard in camera. The judge *Page 862 
hearing the motion may reduce or suspend the sentence if he finds that the defendant rendered such substantial assistance."
Appellant initiated the meeting with the law enforcement officers. His counsel was also present at the meeting. Police Chief Allen Benefield stated that appellant was not asked to confess and no incentive or reward was offered for his statement. Benefield testified that appellant did not provide any valuable information other than his confession concerning the incident in question. Several of the law enforcement officers present at the meeting were under the impression that Lott planned to lead them to a truckload of illegal drugs, but no such information was forthcoming. The Assistant District Attorney for Dale County, Henry Steagall, III, who was also present at the meeting, testified that he told appellant's attorney that the District Attorney's Office was not empowered to grant probation and that they could only make recommendations to the trial court. Steagall's testimony concerning the interview included the following:
 "Q. Now, during that interview, was there any reward, hope of reward, threat, or anything made to him in order to get him to make any statement to y'all?
 "A. I would say absolutely not. In fact, we were asked to be present for the mere fact that we were just going to hear what they had to say."
The trial court upheld the voluntariness of Lott's statement. In the case of Joshua v. State, 372 So.2d 885 (Ala.Crim.App.),cert. denied, 372 So.2d 891 (Ala. 1981), this court enunciated the standard we must use in reviewing such a decision by a lower court:
 "Where there is a conflict in the evidence on the voluntariness of a confession, great weight must be given to the judgment of the trial judge in deciding this issue. His finding will not be disturbed on appeal unless palpably contrary to the weight of the evidence. Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. Rhine v. State, 360 So.2d 1056, 1058 (Ala.Cr.App.), cert. denied, 360 So.2d 1060 (Ala. 1978)."
The record clearly indicates that Appellant understood and waived his Miranda rights, and we find no basis for overturning the ruling of the lower court.
For the reasons cited above, we affirm appellant's conviction.
AFFIRMED.