Robert David Key was indicted for possession of marijuana in violation of Ala. Code § 13A-12-213 (Cum.Supp. 1989). Key had pleaded not guilty to the charge in the indictment. After a hearing and subsequent denial of his motion to suppress certain evidence, Key pleaded guilty to the charge, reserving the right to raise on appeal the issue of the trial court's denial of his suppression motion. He was sentenced to two years in the penitentiary. His sentence was split, with Key to serve 12 months in the Madison County jail and 3 years on probation. *Page 252 
Terry Ergle, an investigator with the Madison County sheriff's department, testified at the suppression hearing that on March 1, 1989, between 7:30 and 8:00 p.m., he received information from a confidential informant that Robert David Key would leave his house located at either 503 or 508 Ward Avenue that evening and that Key would drive a gray Volkswagen north on Highway 72 in the direction of Scottsboro with approximately one pound of marijuana in his possession. This informant had supplied investigator Ergle with information on three prior occasions, and Ergle knew the information he had previously provided had been reliable, because the information had resulted in two convictions.
After receiving this information, investigator Ergle and two other officers, each in unmarked police cars, proceeded to the 500 block of Ward Avenue to keep Key's residence under surveillance. Later that evening, the officers observed Key exit the premises located at 503 Ward Avenue carrying a brown paper bag and get into a gray Volkswagen. The three unmarked cars followed Key to the Jet service station located at the intersection of Meridian and Ward Avenues. The officers set up surveillance at the service station and watched Key put gasoline into the Volkswagen. Investigator Ergle observed Key looking across the street at Ergle and then immediately get back into his Volkswagen and proceed on Ward Avenue toward his residence.
The officers in the three unmarked cars followed Key, and Ergle stopped him by turning on the blue light on his car. When Key did not stop, the officers radioed for two more police cars to approach via a side street so that they could get in front of Key and box him in.
After several police cars had surrounded Key's car, investigator Ergle and some of the other officers approached Key's vehicle on foot with their guns displayed. At this point, Key tried to drive up over the curb. Investigator Ergle testified that he repeatedly advised Key to put his hands on the steering wheel and that when Key finally placed his hands on the steering wheel, Ergle reached through the driver's window and turned off the ignition.
When investigator Ergle asked Key to get out of his car, he detected the strong odor of fresh-cut marijuana coming from the interior of Key's vehicle. Ergle then shined his flashlight inside the Volkswagen and saw the brown paper bag lying on top of a radio on the passenger front floorboard. Ergle went around to the other side of Key's car, opened the door, took the paper bag out and looked inside the bag. He discovered approximately one pound of marijuana in the bag. Ergle then placed the marijuana in an evidence bag, read Key his Miranda rights, and advised him that he was under arrest for possession of marijuana.
Key subsequently gave the officers written permission to conduct a warrantless search of his residence, where the officers found scales, eight plastic bags filled with marijuana, and marijuana paraphernalia, such as pipes and rolling papers.
Key seeks review of the trial court's denial of his motion to suppress. Firstly, Key contends that the police officers could not rely on the known informant's tip in forming the reasonable, articulable suspicion necessary to justify an investigatory stop. Secondly, Key contends that the police officer could have obtained a search warrant for his car and, therefore, no exigent circumstances existed authorizing the warrantless search of his car.
 I.
Probable cause is not necessary to stop a person for questioning or investigative detention; the officer need only be able to articulate specific facts and inferences that lead to a reasonable suspicion of criminal activity. Terry v. Ohio,392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968).
The State of Alabama has codified the investigative stop atAla. Code 1975, § 15-5-30, which authorizes any law enforcement officer to "stop any person abroad in a public place whom he reasonably suspects is committing, has committed *Page 253 
or is about to commit a felony or other public offense." Moreover, the reasonable, articulable suspicion necessary to justify an investigatory stop may be supplied by information from citizen-informants. Crawley v. State, 440 So.2d 1148, 1150
(Ala.Cr.App. 1983).
In Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921,32 L.Ed.2d 612 (1972), the United States Supreme Court sustained a Terry stop and frisk undertaken on the basis of a tip given in person by a known informant who had provided information in the past. The Court reasoned that the information carried sufficient "indicia of reliability" to justify a forcible stop.407 U.S. at 147, 92 S.Ct. at 1923.
More recently in the case of Alabama v. White, ___ U.S. ___,110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), United States Supreme Court sustained a Terry stop undertaken on the basis of an anonymous tip, as corroborated by independent police work. The Court reasoned that although the anonymous tip standing alone lacked the necessary indicia of reliability, the totality of the circumstances demonstrated that significant aspects of the informant's story were sufficiently corroborated by the police to furnish reasonable suspicion.
Applying these decisions to the case at bar, it is clear that when the officers stopped Key, the confidential tip had been sufficiently corroborated to furnish reasonable suspicion that Key was engaged in criminal activity and that the investigative stop did not therefore violate the Fourth Amendment.
Firstly, under the rationale of Adams v. Williams, supra, the stop could be sustained on the basis of the tip alone — the tip was provided by a known informant who had provided correct and accurate information to the officers on three prior occasions resulting in two convictions, thereby demonstrating the informant's knowledge or veracity. The tip, moreover, was detailed and carried sufficient indicia of reliability to justify a forcible stop: Key would leave his residence at either 503 or 508 Ward Avenue in a gray Volkswagen in possession of about one pound of marijuana, and he would drive his car north on Highway 72 in the direction of Scottsboro.
Secondly, under the rationale of Alabama v. White, supra, the stop could be sustained on the basis of the tip, as corroborated by independent police work. Almost every detail mentioned by the known informant was verified: Key left his residence at 503 Ward Avenue carrying a brown paper bag and got into the particular vehicle that was described by the informant. As for the informant's prediction of Key's destination, it is true that the officers only observed him driving from his residence to a service station located at the intersection of Meridian and Ward Avenues. It is not inconsistent, however, for Key to stop for fuel near his home before going out of town on Highway 72 as per the informant's prediction.
Key's evasive actions at the service station or when he observed Investigator Ergle in the unmarked police car furnished additional specific and articulable facts, which, when taken together with the rational inferences to be drawn from those facts, could lead to a reasonable suspicion of criminal activity: after Key saw Ergle, he immediately got into his car and left the parking lot at a high rate of speed; Key did not stop his vehicle when Ergle turned on his blue light; Ergle had to radio for two backup police vehicles to assist in stopping Key's car; despite being surrounded by several police cars, Key attempted to drive over the curb to elude the police; and the only way Ergle was able to stop Key's vehicle was to reach into his car and turn off the ignition while other officers displayed their weapons.
We conclude that under the totality of the circumstances, the tip from the known informant, as corroborated by independent police work, exhibited sufficient indicia of reliability to justify the investigative stop of Key's car.
 II.
It is well settled that a warrantless search of an automobile may be conducted where probable cause and exigent *Page 254 
circumstances co-exist. Minnifield v. State, 390 So.2d 1146,1152-53 (Ala.Cr.App.), cert. denied, 390 So.2d 1154 (Ala. 1980). The existence of the odor of marijuana is enough to provide probable cause to search an automobile. Sterling v.State, 421 So.2d 1375, 1381 (Ala.Cr.App. 1982). Exigent circumstances arise, moreover, whenever the object to be searched is mobile or moveable, as in the case of an automobile. State v. Hammac, 546 So.2d 392, 396 (Ala.Cr.App. 1989).
A finding of probable cause to make a warrantless search of Key's automobile was justified when investigator Ergle detected the odor of fresh-cut marijuana emanating from the interior of the car. Ergle testified that he had smelled marijuana 50 to 100 times in the past and that fresh-cut marijuana smells like fresh-cut grass but has a slightly different aroma. After smelling the marijuana, Ergle shined a light into Key's car and saw on the passenger front floorboard a brown paper bag similar to the one Ergle had earlier observed in Key's hand. Clearly, exigent circumstances existed in the instant case, since the object to be searched was an automobile.
Because the warrantless search was proper under the probable-cause-plus-exigent-circumstances exception, Key's motion to suppress the evidence obtained from the search was properly denied.
The foregoing opinion was prepared by JAMES H. FAULKNER, Retired Justice, Supreme Court of Alabama, serving as a judge of this court, and his opinion is adopted as that of this court.
The judgment of the circuit court is affirmed.
AFFIRMED.
TAYLOR, TYSON, BOWEN and McMILLAN, JJ., concur.
PATTERSON, J., concurs in result only. *Page 482