Randall Riley was indicted for the possession of a controlled substance, in violation of § 13A-12-212(a)(1), Code of Alabama 1975. The jury found him guilty as charged in the indictment and the trial judge sentenced him to two years' imprisonment. The trial judge suspended the sentence and placed him on two years' probation. He appeals.
Charles Tabor testified that on the night of March 11, 1989, he was working as a security guard at Sammy's Go Go Lounge in Birmingham, Alabama. That night Tabor saw the appellant and a man identified as Mr. Green sitting at a table together in the lounge. At some point, Tabor walked outside and met with Jefferson County Deputy Sheriff William Love. As Tabor and Love were talking, Mr. Green came out of the lounge and walked to an automobile that was parked in the parking lot. Mr. Green opened the car door and reached into the glove compartment and then put something in his pocket. Mr. Green then left the car and went back into the lounge. Tabor and Love followed him inside. Once inside the lounge, Mr. Green sat down at the table with the appellant again. Tabor and Love then saw Mr. Green exchanging something with the appellant under the table. Love testified that he actually saw Green passing green pills under the table to the appellant. At this point, Love and Tabor went over to the table where the appellant and Green were sitting and they grabbed the hands of Green and the appellant. When this happened, green pills fell out of the appellant's hands and dropped onto the floor. Love picked up the pills from the floor and then placed Green and the appellant under arrest for possession of a controlled substance. Love testified that he also found some more green pills in the appellant's pants pocket. Love also inventoried the contents of the vehicle where Green had gone earlier. Inside the glove compartment, Love found a packet containing some more green pills.
Love turned all of the pills over to Officer Mike Campbell, who deposited them into the drug locker at the police station, where they remained until Officer Bernard Woods removed them and took them to Michael Sparks at the Department of Forensic Sciences. Sparks testified that he inspected the 15 pills that he had received from Woods and determined that they were all the same, so he used only one of the pills for analysis. The analysis showed that the pill contained "3,4 methylenedioxy methamphetamine", which is commonly known as MDMA or "ecstasy".
 I
The appellant contends that the pills found in his car should not have been admitted into evidence because, he says, the car was improperly impounded and, therefore, the inventory search of his car was not justified. "[T]o justify an inventory search of a vehicle, that vehicle must be properly impounded."Ringer v. State, *Page 1355 489 So.2d 646, 648 (Ala.Crim.App.), cert. denied (Ala. 1986). Section 32-5A-139, Code of Alabama 1975, authorizes the impoundment of a vehicle only when it is parked on or adjacent to a highway or "in such position or under such circumstances as to obstruct the normal movement of traffic." Here, the vehicle in question was parked in a private parking lot, and, thus, the statute authorizing the impoundment of vehicles is inapplicable to the instant situation. Morton v. State,452 So.2d 1361 (Ala.Crim.App.), cert. denied (Ala. 1984) (police not justified "in impounding the vehicle under color of authority of § 32-5A-139, Code of Alabama 1975, since it was legally parked upon private property, creating no safety risk to the public").
However, this court has written:
 "It has been held that the police have an inherent authority to impound vehicles, aside from statutory authority based on what is called the community caretaking function." Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). That function was explained as follows:
 " 'In the interests of public safety . . . automobiles are frequently taken into police custody. . . . To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.' 428 U.S. at 368-69, 96 S.Ct. at 3096-97."
Morton, 452 So.2d at 1365. From our review of the record, we find no evidence that the police had authority to impound the vehicle based on the "community caretaking function." Furthermore, there is no indication in the record that the impoundment of the vehicle was necessary to protect the vehicle from damage or to protect the police from liability. Morton.
Therefore, we hold that the appellant's vehicle was improperly impounded.[1]
Although the search of the appellant's vehicle cannot be justified as an inventory search, we find that the search was justified because Officer Love had probable cause to believe that the vehicle contained contraband. See Ex parte Boyd,542 So.2d 1276 (Ala.), cert. denied, Boyd v. Alabama, ___ U.S. ___,110 S.Ct. 219, 107 L.Ed.2d 172 (1989). "The law is clear that a warrantless search of an automobile is justified where there is probable cause to believe the vehicle contains contraband."Lott v. State, 456 So.2d 857, 859-60 (Ala.Crim.App. 1984). "The test for probable cause is 'whether the facts available to the officer at the moment of the seizure or search, would warrant a man of reasonable caution to believe that the action taken was appropriate.' " Lott, 456 So.2d at 860 (quoting C. Gamble, McElroy's Alabama Evidence, § 334.01(7)(b) (3d ed. 1977)). Love testified that he saw Green rummaging through the glove compartment of this car. Love said that he then observed Green putting something in his pocket and that Green immediately returned to the lounge. Love then observed Green hand green pills to the appellant under the table, *Page 1356 
at which time Love grabbed the appellant's hands and discovered pills in the appellant's possession. These facts certainly gave Love probable cause to believe that there were more pills in the vehicle. Therefore, the search of the vehicle was proper.
 II
The appellant makes several arguments with regard to the admission of the pills into evidence. First, he contends that it was error to admit into evidence all of the pills, because the pills (from the appellant's hands, his pants pocket, and the vehicle) had been commingled when they were given to Sparks to analyze. Second, he argues that since only one of the pills was analyzed, that pill could have been one of the pills that was found in the search of the vehicle and that the state failed to prove constructive possession of any of the pills removed from the vehicle. These arguments lack merit. Sparks testified that all of the pills were identical in relation to size, shape, color, and general appearance and, thus, that it was only necessary to test one of the pills. Therefore, it made no difference as to the place where the pill which was tested was found. Furthermore, the quantity of a controlled substance possessed is immaterial under § 13A-12-212. It is the mere possession of the controlled substance that is prohibited by this statute. See Hare v. State, 53 Ala. App. 596, 302 So.2d 569
(1974). Clearly, the state proved the appellant's actual possession of a controlled substance, and it properly established a prima facie case.
The judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.
[1] We must also note that the inventory search of the car was improper because there was absolutely no testimony in the record that the inventory of this vehicle was conducted in accordance with policies and procedures established by the Birmingham Police Department regarding inventory searches or that such policies or procedures existed. In Ex parte Boyd,542 So.2d 1276 (Ala. 1989), the Alabama Supreme Court held that in order for evidence seized pursuant to an inventory search "to pass constitutional muster, the record must sufficiently reflect what that policy is [the policy of the law enforcement agency with regard to inventory searches], describe the policy in such a way that its reasonableness can be reviewed, and present adequate evidence of what the employed criteria were."Boyd, 542 So.2d at 1283 (emphasis in original).