T.A.P. was adjudicated delinquent, pursuant to a plea of true to the delinquency petition, in the Jefferson Juvenile Court for possession of a controlled substance, specifically *Page 2 
heroin, a violation of § 13A-12-212(a)(1), Ala. Code 1975. He was committed to the Alabama Department of Youth Services.
On appeal, T.A.P. argues that the trial court erred in denying his motion to suppress the heroin seized from his shoe because, he says, the police did not have probable cause to search his shoe.[1]
Specifically, T.A.P. argues that the only information supporting the search came from an unidentified informant who gave only general information to the police, whose information was not corroborated, and whose identity, reliability, veracity, and basis of knowledge were unknown. Thus, T.A.P. concludes, there was no probable cause for the search. We disagree.
At the suppression hearing, [2] O'Brian Brown, an officer with the Birmingham police department, testified that on January 18, 2010, he responded to a domestic-disturbance call *Page 3 
involving a woman, Ebony Smith, who had stated that her boyfriend had pulled a gun on her in an apartment and had threatened to shoot her. When Officer Brown arrived at the scene, Smith was outside the apartment and told him that her boyfriend, who was armed, and three other males, including T.A.P., were still inside the apartment. Other officers also responded to the call, and Officer Brown and several other officers approached the apartment, knocked on the door, and announced themselves as police officers. Because Smith had reported that her boyfriend was armed, Officer Brown said, he approached the door with his weapon drawn. According to Officer Brown, Smith's boyfriend answered the door and three males and one female were also standing inside the apartment. The officers ordered all five people to step outside of the apartment, which they did, and the officers then placed all five in handcuffs and performed patdown searches of each to check for weapons.[3]
The officers then entered and searched the apartment, where they found four assault rifles, four handguns, and a *Page 4 
large amount of cash inside a lady's purse. Officer Brown then brought the female who had been inside the apartment when he arrived back inside the apartment and questioned her. The female told Officer Brown that the large amount of cash in the purse was not hers but that "they," meaning the males who were inside the apartment, had put the cash in her purse. (R. 10.) When asked by Officer Brown if there were any drugs in the apartment, the female said no, but she told Officer Brown that "one of the guys had drugs in their shoe." (R. 10.) The female did not state which of the four males who had been in the apartment had the drugs, nor did she identify the type of drugs. Officer Brown then went back outside, ordered the four males to remove their shoes, searched the shoes, and found what appeared to be heroin in T.A.P.'s shoe.
Officer Brown testified that T.A.P. was not Smith's boyfriend and was not the renter of the apartment and that no weapons were found on his person when he was patted down. Officer Brown further testified that, at first, he believed the apartment was rented by Smith's boyfriend, but, Officer Brown stated, Smith's boyfriend told him that the apartment was actually rented by another friend and that Smith's *Page 5 
boyfriend was just staying there. Officer Brown also testified that he did not know the name of the female who was inside the apartment who had given him the information regarding the drugs in one of the males' shoes and that he, in fact, knew nothing about her, such as whether she had a criminal record, whether she had a history of telling the truth to police officers, or whether she was a drug dealer.
 "In reviewing a trial court's ruling on a motion to suppress, this Court reviews the trial court's findings of fact under an abuse-of-discretion standard of review. `When evidence is presented ore tenus to the trial court, the court's findings of fact based on that evidence are presumed to be correct,' Ex parte Perkins, 646 So. 2d 46, 47 (Ala. 1994); `[w]e indulge a presumption that the trial court properly ruled on the weight and probative force of the evidence,' Bradley v. State, 494 So. 2d 750, 761 (Ala. Crim. App. 1985), aff'd, 494 So. 2d 772 (Ala. 1986); and we make `"all the reasonable inferences and credibility choices supportive of the decision of the trial court."' Kennedy v. State, 640 So. 2d 22, 26 (Ala. Crim. App. 1993), quoting Bradley, 494 So.2d at 761. `[A]ny conflicts in the testimony or credibility of witnesses during a suppression hearing is a matter for resolution by the trial court. . . . Absent a gross abuse of discretion, a trial court's resolution of [such] conflict[s] should not be reversed on appeal.' Sheely v. State, 629 So. 2d 23, 29 (Ala. Crim. App. 1993) (citations omitted). However, `"[w]here the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the [appellate] Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court's application of the law to those facts."` *Page 6 State v. Hill, 690 So. 2d 1201, 1203 (Ala. 1996), quoting Stiles v. Brown, 380 So. 2d 792, 794 (Ala. 1980). `"`[W]hen the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment.'"' Ex parte Jackson, 886 So. 2d 155, 159 (Ala. 2004), quoting Hill, 690 So. 2d at 1203, quoting in turn Ex parte Agee, 669 So. 2d 102, 104 (Ala. 1995). A trial court's ultimate legal conclusion on a motion to suppress based on a given set of facts is a question of law that is reviewed de novo on appeal. See State v. Smith, 785 So. 2d 1169 (Ala. Crim. App. 2000)."
State v. Hargett,935 So. 2d 1200, 1203-04 (Ala. Crim. App. 2005). In this case, the evidence presented at the suppression hearing was undisputed; therefore, our review of the trial court's denial of T.A.P.'s motion to suppress is de novo.
We begin by noting that, in their appellate briefs, both parties treat the unidentified female who was found inside the apartment and who gave the information regarding the drugs to Officer Brown as an informant or a tipster, and both parties analyze the issue of probable cause to search under that assumption, arguing about her reliability, veracity, and basis of knowledge. See, e.g.,Illinois v. Gates, 462 U.S. 213 (1983). However, the female was more akin to a eyewitness than she was to an informant or a tipster. She did not *Page 7 
approach or telephone the police to provide the information, nor did she, as T.A.P. recognizes in his brief, provide the normally detailed information that informants and tipsters provide, although she did identify the specific location — a shoe — where the drugs could be found. Rather, as defense counsel admitted at the suppression hearing, the female was simply "the person in the apartment where a crime occurred." (R. 24.)
"Courts have consistently held that the proof-of-veracity rules applied in informant cases do not apply with respect to other sources of information, such as when an `ordinary citizen' or `citizen-informer' comes forward and reports to the police that he has seen evidence of a crime located at a certain place or that someone has admitted participation in criminal activity to him." Neal v. State,731 So. 2d 609, 615 (Ala. Crim. App. 1997), aff'd,731 So. 2d 621 (Ala. 1999). "[W]here, as here, an ordinary citizen informs the police that he has seen evidence of a crime or that someone has admitted involvement in a crime to him, he is presumed to be reliable, and an officer is not required [when requesting a search warrant] to supply the magistrate with information explaining *Page 8 
why he believes the citizen-informant to be reliable."Rutledge v. State, 745 So. 2d 912, 918 (Ala. Crim. App. 1999) As this Court recognized in Gray v. State,507 So. 2d 1026 (Ala. Crim. App. 1987), "[t]he `most sound position on the matter' is that `"if the citizen or victim informant is an eyewitness this will be enough to support probable cause even without specific corroboration of reliability."'"507 So. 2d at 1028 (quoting 1 [W. LaFave] Search andSeizure at p. 592 [(1978)] (quoting in turn Allison v.State, 62 Wis.2d 14, 214 N.W.2d 437 (1974))). See alsoYielding v. State, 371 So. 2d 951, 957 (Ala. Crim. App. 1979) ("The most commonly used allegation for crediting the informant's story is that the informant has previously furnished information that led to convictions. However, the credibility or reliability of the unidentified informant's information may be shown in the informant's statement of facts indicating that he was an eye witness with personal knowledge of the location of the evidence."); andUnited States v. Unger,469 F.2d 1283, 1287 n. 4 (7th Cir. 1972) ("Various federal and state courts have distinguished the government informant . . . from the eyewitness, victim of a crime or a citizen who provides *Page 9 
information of a crime. . . . The rationale of these holdings is that the concomitant danger of self-interest does not inure to a victim or witness to a crime as easily as it would to a government informant.").
 "`Probable cause exists where all the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and that contraband would be found in the place to be searched.' Sheridan v. State, 591 So. 2d 129, 130 (Ala. Cr. App. 1991). `The requisite probable cause is present "if a reasonably prudent person, based on the facts and circumstances which the officer knows, would be justified in concluding that the items sought are connected with criminal activity and that they will be found in the place to be searched. Illinois v. Gates, 462 U.S. 213 [103 S.Ct. 2317, 76 L.Ed.2d 527] . . . (1983)."' Day v. State, 539 So. 2d 410, 413-14 (Ala. Cr. App. 1988). `"The test for probable cause is `whether the facts available to the officer at the moment of the seizure or search, would warrant a man of reasonable caution to believe that the action taken was appropriate.'"' Ivey v. State, 698 So. 2d 179, 185-86 (Ala. Cr. App. 1995), aff'd, 698 So. 2d 187 (Ala. 1997) (quoting Riley v. State, 583 So. 2d 1353, 1355 (Ala. Cr. App. 1991))."
Johnson v. State, 719 So. 2d 272, 273 (Ala. Crim. App. 1998). "`"Probable cause is concerned with `probabilities,' that `are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act.'"'" Harris v. State, *Page 10 948 So. 2d 583, 587 (Ala. Crim. App. 2006) (quoting Chevere v.State, 607 So. 2d 361, 368 (Ala. Crim. App. 1992) (quoting in turn Carter v. State,435 So. 2d 137, 139 (Ala. Crim. App. 1982) (quoting in turnBrineqar v. United States, 338 U.S. 160, 175 (1949)))).
Here, Officer Brown had probable cause to search T.A.P. After Officer Brown and other officers responded to the domestic-disturbance report and were informed by Smith that her boyfriend was armed and inside an apartment with several other people, the officers approached the apartment, knocked on the door, and removed the four males and one female who were inside, placing them in handcuffs and patting them down for safety. A subsequent search of the apartment revealed four assault rifles, four handguns, and a large amount of cash. "It has been recognized that `weapons and violence are frequently associated with drug transactions.'"Warren v. State, 783 So. 2d 74, 80-81 (Ala. Crim. App. 1998), rev'd on other grounds, 783 So. 2d 86 (Ala. 2000) (quotingUnited States v. Brown,913 F.2d 570, 572 (8th Cir. 1990)). Indeed, "Alabama case law recognizes that large sums of cash are relevant and material to a charge of. . . . possession of a *Page 11 
controlled substance," Rowell v. State,666 So. 2d 830, 832 (Ala. Crim. App. 1995), and that "[f]irearms and large amounts of cash are `routinely found in places where drug dealing occurs.'" Menefee v. State,592 So. 2d 642, 645 (Ala. Crim. App. 1991) (quoting Toney v.State, 572 So. 2d 1308, 1315 (Ala. Crim. App. 1990)). Recognizing the possible link to illegal narcotics, Officer Brown questioned the female, who stated that one of the males had drugs in his shoe. The female was neither an anonymous tipster nor a confidential informant, but, given her presence inside the apartment, she was, as defense counsel admitted, an eyewitness to a crime — specifically, to the possession of illegal narcotics, and, most likely, to the domestic disturbance that initially brought the officers to the apartment in the first place. The totality of the circumstances known to Officer Brown at the time of the search — the weapons found in the apartment, the large amount of cash found in the apartment, and an eyewitness who was in the apartment who stated that one of the males had drugs in his shoe — were sufficient to warrant a person of reasonable caution to conclude that an offense was being committed and that contraband would be found in the shoe of *Page 12 
one of the males who had been in the apartment. Therefore, the juvenile court properly denied T.A.P.'s motion to suppress.
Based on the foregoing, the judgment of the juvenile court is affirmed.
AFFIRMED.
Wise, P.J., and Windom, Kellum, and Main, JJ., concur.
[1] T.A.P. reserved this issue for appeal before pleading true to the petition. (R. 31.)
[2] The record reflects that the juvenile court conducted a suppression hearing on T.A.P.'s motion to suppress before T.A.P. pleaded true to the charge and was adjudicated delinquent. Following his plea, but before disposition, T.A.P. filed a motion to reconsider and/or set aside the denial of the motion to suppress and the trial court conducted another hearing, after which it denied the motion.
[3] T.A.P. does not challenge the legality of the patdown conducted pursuant to Terry v. Ohio, 392 U.S. 1 (1968). *Page 1